FILED

2024 Dec-27 PM 12:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANGELA JORDAN,** | ) | |
| | ) | |
| **Plaintiff and Counter-** | ) | |
| **Defendant,** | ) | |
| | ) | **Case No.: 2:24-cv-00526-AMM** |
| **v.** | ) | |
| | ) | |
| **VARICOSITY, LLC,** | ) | |
| | ) | |
| **Defendant and Counter-** | ) | |
| **Plaintiff.** | ) | |

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION TO DISMISS

This matter comes before the court on a motion to dismiss or, in the alternative, for a more definite statement, Doc. 11, filed by plaintiff and counter-defendant, Angela Jordan in response to a counterclaim, Doc. 8, filed by defendant and counter-plaintiff, Varicosity, LLC. For the reasons explained below, the motion is **DENIED**.

## I.    BACKGROUND

This dispute arises from an employment relationship between Ms. Jordan and Varicosity, where Ms. Jordan alleges to have been the victim of racial discrimination. *See generally* Doc. 1. Ms. Jordan identifies as "a woman of African ancestry, the 'race' colloquially referred to as 'Black.'" *Id*. ¶ 17. She was employed by Varicosity, a medical clinic, as a front desk attendant from March 2018 to June

2023. *Id.* ¶¶ 18, 70–71. Ms. Jordan states that her starting salary was lesser than her colleague "of European ancestry, the 'race' colloquially referred to as 'white.'" *Id.* ¶ 19. Ms. Jordan states that this colleague "had no medical background" while Ms. Jordan "had over ten years of experience in the medical field." *Id.* ¶¶ 20–21.

"After about a year" of employment, Ms. Jordan's responsibilities "changed to include billing, scheduling, handling referrals to other physicians, medical records retrieval, and disability claim forms." *Id.* ¶ 22. Additionally, Ms. Jordan was asked to clean the office space for two hours after work at an hourly rate of $37.50. *Id.* ¶¶ 28–29. In the interim, Varicosity opened a new clinic in Montgomery, which was a "much larger office space" than the previous location. *Id.* ¶ 40. Ms. Jordan cleaned this clinic as well as the clinic in Opelika, which required her to travel and work additional hours. *Id.* ¶¶ 36, 40–41. Ms. Jordan states that despite her evolving responsibilities, Varicosity did not increase her salary, pay her overtime wages, or change her title. *Id.* ¶¶ 23–24, 37–39.

In January 2023, Varicosity "hired Amanda Gilmore as its Human Resources Manager." *Id.* ¶ 50. Ms. Jordan states that "[Ms.] Gilmore or some other member of management installed software on [Ms. Jordan's] computer to begin surreptitiously recording calls between her and patients" without notice or consent. *Id.* ¶ 54, 57–58. Ms. Jordan states that "[t]he only other person whose computer had the call

recording software installed was another black employee in another office" and that "[w]hite employees did not have the new monitoring software on their computers." *Id*. ¶¶ 55–56. Ms. Jordan also states that Ms. Gilmore closely scrutinized Ms. Jordan's work and "alleged that [Ms.] Jordan had stayed late without getting permission before working," even though Ms. Jordan "had never been advised that she could not work over 40 hours without permission." *Id*. ¶¶ 51, 59–60, 63.

In a June 2023 email chain between Ms. Gilmore and Ms. Jordan, Ms. Jordan expressed that "she believed she was being discriminated against and asked for a meeting with" the owner of the clinic, C. Duane Randleman, "to discuss her claims of discrimination." *Id*. ¶ 67. Later that month, Ms. Jordan was called to a meeting with Dustin Taylor, the Chief Operating Officer, and Ms. Gilmore, where Ms. Jordan was fired. *Id*. ¶¶ 70–71. When asked why she was fired, Ms. Jordan states that Varicosity did not provide her "any evidence of poor performance or disciplinary reasons for the termination." *Id*. ¶ 73. She was told that "Dr. Randleman would like to go another route." *Id*. ¶ 74.

Ms. Jordan states that her position was filled "by a younger white person" and that "[s]ince [her termination] . . . every person who has been hired to fill the role . . . has been white." *Id*. ¶¶ 75–76.

On April 26, 2024, Ms. Jordan brought claims against Varicosity under Title

3

VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and under 42 U.S.C. § 1981, alleging pay discrimination, termination of employment based on race, and retaliation. *See* Doc. 1. ¶¶ 78–142. Ms. Jordan also brought claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, alleging that Varicosity owes her overtime wages. *Id*. ¶¶ 143–152.

On July 1, 2024, Varicosity filed an answer denying all material allegations in the complaint and asserting twenty-seven defenses. *See* Doc. 8. Additionally, Varicosity brought counterclaims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, and asserted claims for breach of contract, tortious interference with business relations, and breach of fiduciary duty. *Id*. at 27–30.

Ms. Jordan responded with this motion to dismiss or, in the alternative, for a more definite statement. Doc. 11. Varicosity filed a response. Doc. 15. Ms. Jordan filed a reply. Doc. 16.

## II.    LEGAL STANDARD

### A. Motion to Dismiss—Rule 12(b)(6)

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not make "detailed factual allegations"; its purpose is only to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. To test the complaint, the court discards any "conclusory allegations," takes the facts alleged as true, *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018), and "draw[s] all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). These facts and inferences must amount to a "plausible" claim for relief, a standard that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## B. Motion for a More Definite Statement—Rule 12(e)

Rule 12(e) sets a very high standard for determining whether to grant a motion for a more definite statement: the complaint must be "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A Rule 12(e) motion "must point out the defects complained of and the details desired." *Id.* Litigants may not use a Rule 12(e) motion to circumvent the short and plain statement requirement or to obtain information that can otherwise be obtained in discovery. *See Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959). Nevertheless, when a plaintiff fails to identify key facts, unduly increasing the

burden of understanding the factual allegations, district courts may grant a Rule 12(e) motion for a more definite statement. *Cf. Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1324 (11th Cir. 2015).

## III.    ANALYSIS

### A. Counterclaim I: Computer Fraud and Abuse Act

Varicosity alleges that Ms. Jordan violated the Computer Fraud and Abuse Act ("CFAA"). Doc. 8 at 27–28. Varicosity alleges that before and after Ms. "Jordan was separated from her employment with Varicosity, [she] accessed the practice's computer system and patient communication management system beyond her authorization to use patient information in an unauthorized manner." *Id*. at 26–27. Varicosity also alleges that "[Ms.] Jordan informed patients . . . not to go through with their appointments, and to go see other providers." *Id*. at 27. Finally, Varicosity alleges that it "has been damaged as the proximate result of the actions of [Ms.] Jordan." *Id*. at 28.

Ms. Jordan argues that these allegations fail to specify when she violated the CFAA. Doc. 11 at 7. Without this detail, Ms. Jordan argues that she cannot ascertain whether Varicosity's claim falls within the two-year statute of limitations proscribed by the CFAA. *Id*. Ms. Jordan also argues that Varicosity did not specify how her conduct violated the CFAA. *Id*. at 7–8.

Varicosity pleaded sufficient facts to state a plausible claim for relief. "A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent from the face of the complaint." *Isaiah v. JP Morgan Chase Bank, N.A.*, 960 F.3d 1296, 1304 (11th Cir. 2020); *see also Wainberg v. Mellichamp*, 93 F.4th 1221, 1225 (11th Cir. 2024). Ms. Jordan may inquire during discovery into the issue whether Varicosity's claim is time barred. There is no requirement that Varicosity preemptively negate Ms. Jordan's affirmative defense. Moreover, Varicosity states that Ms. Jordan accessed information in an unauthorized manner "before" and "after" her employment was terminated, which provides a timeframe for the events it alleges. Doc. 8 at 26–27. Additionally, Varicosity suggests that Ms. Jordan used information obtained in an unauthorized manner to discourage patients from attending their appointments. *See id.* at 27. These facts are not "so vague or ambiguous" that Ms. Jordan cannot reasonably prepare a response. Fed. R. Civ. P. 12(e).

### B. Counterclaim II: Breach of Contract

Varicosity asserts that "[a]s a condition of her employment with Varicosity, [Ms.] Jordan agreed to abide by the terms of the Employee Handbook," which "states that an employee's conduct must be such that actions do not negatively affect

[Varicosity] or fellow employees." Doc. 8 at 28 (cleaned up). Additionally, the handbook states that "[i]nformation obtained about a patient is strictly confidential . . . [and] must never be discussed with any other person outside the healthcare team . . . . Revealing such confidential information or any other business information regarding [Varicosity] may result in immediate termination." *Id*.

Varicosity alleges that "[b]efore [Ms.] Jordan was separated from her employment with Varicosity, [she] failed to return calls and messages, including those from Varicosity patients and referring physicians" and "told certain referring physicians that Varicosity no longer performed the work for which it was known." *Id*. at 26.

Ms. Jordan argues that these allegations fail to specify whether the employment handbook formed a valid contract between Ms. Jordan and Varicosity, whether there was a breach, and if there was a breach, when it occurred, thereby failing to state a plausible claim for relief. Doc. 11 at 9. Without knowing when the alleged breach occurred, Ms. Jordan argues that she cannot ascertain whether Varicosity's claim falls within the statute of limitations prescribed by Alabama law for breach-of-contract claims. *Id*.

This court finds that Varicosity pleaded sufficient facts to state a plausible claim for relief. Varicosity's allegations that Ms. Jordan failed to perform her duties

8

including returning "calls and messages" from some "patients and referring physicians" and informing "certain referring physicians that Varicosity no longer performed the work for which it was known" make plausible the allegation that Ms. Jordan violated the handbook. Doc. 8 at 26. Moreover, stating that Varicosity and Ms. Jordan shared an employer-employee relationship and that specific acts by Ms. Jordan violated provisions of the employee handbook is sufficient to make plausible the existence of a contract and its breach, thereby containing the details necessary for Ms. Jordan to reasonably prepare a response. *See id*. at 25–26, 28. The federal rules do not require a complainant to establish every element of a claim during the pleading stage. *See Speaker v. U.S. Dep't of HHS CDC & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010) (explaining that a plaintiff need not prove her case on the pleadings and that the pertinent question is whether the complaint provides enough factual matter to raise a reasonable inference, and thus a plausible claim, for relief). Finally, Ms. Jordan's argument about the timing of her alleged breach fails for the same reasons her similar argument about the CFAA claim fails. *See supra* Part III. A.

## C. Counterclaim III: Tortious Interference with Business Relations

Varicosity alleges that "[Ms.] Jordan informed patients . . . not to go through with their appointments, and to go see other providers." Doc. 8 at 26–27. In doing

so, Varicosity alleges that Ms. Jordan "intentionally interfered" with the "protectible business relationship between Varicosity and its referring physicians" and patients. *Id*. at 29.

Ms. Jordan argues that these allegations fail to specify when she intentionally interfered with a business relationship. Doc. 11 at 10. Without this information, Ms. Jordan argues that she cannot ascertain whether Varicosity's claim falls within the two-year statute of limitations proscribed by Alabama law. *Id*. Moreover, Ms. Jordan argues that these allegations lack necessary detail about the relationships and fail to identify the damages incurred by Varicosity. *Id*.

Ms. Jordan's argument about the timing of her alleged conduct fails for the same reasons her similar argument about the CFAA claim fails. *See supra* Part III. A. Moreover, Varicosity's allegations that Ms. Jordan "informed patients . . . not to go through with their appointments, and to go see other providers" and that "Varicosity had a protectable business relationship" with "referring physicians" and "patients" provides sufficient detail to put Ms. Jordan on notice of the claims asserted against her. Doc. 8 at 27, 29. An inventory of the damages that may have resulted from these alleged acts is not necessary to satisfy the pleading standard. *See Speaker*, 623 F.3d at 1386.

### D. Counterclaim IV: Breach of Fiduciary Duty

Varicosity alleges that "[Ms.] Jordan was employed in a position of trust[,] . . . had access to employee protected health information[,] . . . was expected to use her best efforts to further the goals of Varicosity[,] . . . owed . . . fiduciary duties [of] . . . loyalty and care" to Varicosity, and breached her duty by "alienating and driving away referring physicians and patients through her conduct." Doc. 8 at 29–30. Varicosity also alleges that Ms. Jordan misused patient information, made misrepresentations to patients as well as referring physicians, and failed to adequately perform her duties. *Id*. at 26–27.

Ms. Jordan argues that these allegations fail to specify when she breached her fiduciary duties. Doc. 11 at 12. Without this information, Ms. Jordan argues that she cannot ascertain whether Varicosity's claim falls within the two-year statute of limitations prescribed by Alabama law. *Id*. Moreover, Ms. Jordan argues that these allegations lack detail and fail to identify the damages incurred by Varicosity. *Id*.

Ms. Jordan's argument about the timing of her alleged breach fails for the reasons already explained. *See supra* Part III. A. Moreover, Varicosity's allegations that Ms. Jordan "was employed in a position of trust" and told "referring physicians that Varicosity no longer performed the work for which it was known" and "patients that Varicosity no longer wished to have them" provide sufficient detail to state a plausible claim for relief and allow Ms. Jordan to prepare a response. Doc. 8 at 26;

*see* Fed. R. Civ. P. 12(e).

## IV.    CONCLUSION

For the reasons explained above, Ms. Jordan's motion to dismiss or, in the alternative, for a more definite statement, Doc. 11, is **DENIED**.

**DONE** and **ORDERED** this 27th day of December, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

12